657 N.W.2d 718 (2003)
John Chappel CAIN, Raymond C. Walen, Jr., Elton Floyd Mizell, Paul Allen Dye, John Chandler Ewing, Delbert M. Faulkner, C. Pepper Moore, Ramon Cobos, and Ronald Simpson-Bey, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,
v.
DEPARTMENT OF CORRECTIONS, Defendant-Appellee.
John Chappel Cain, Raymond C. Walen, Jr., Elton Floyd Mizell, Paul Allen Dye, John Chandler Ewing, Delbert M. Faulkner, C. Pepper Moore, Ramon Cobos, and Ronald Simpson-Bey, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,
v.
Department of Corrections, Defendant-Appellee.
Docket Nos. 123395, 123996.
Supreme Court of Michigan.
March 19, 2003.
On order of the Court, the application for leave to appeal from the December 27, 2002 decision of the Court of Appeals is considered. The application for leave to appeal is DENIED, and the March 10, 2003 stay is VACATED, except that Prison Legal Services of Michigan, Inc., shall be given until 28 days from the date of this order to remove itself from the premises of the Department of Corrections. In all other respects, leave to appeal is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.
We further ORDER that the trial court bring this fifteen-year-old suit promptly to final judgment, as further explained below. In 1996seven years agothis Court wrote:
"After nearly eight years of pretrial litigation, this Court is convinced that the resolution of this case must be accomplished fairly and expeditiously. We expect not only the swift resolution of this case, we further expect that the parties and the court will engage in the appropriate good will so that resolution will be an easier task.... We further order that the court and the parties prepare an expedited calendar for scheduling purposes and that the court submit to this Court a report indicating the dates set for trial in this matter." Cain v. Department of Corrections, 451 Mich. 470, 518, 548 N.W-2d 210 (1996).
We now ORDER the trial court to submit to this Court within 21 days of the date of this order a plan and schedule for bringing this matter to final judgment by November 1, 2003. The plan and schedule shall be approved by the Chief Judge of the Ingham Circuit Court, who shall take responsibility for seeing that the plan and schedule are successfully implemented. MCR 8.110(C)(2)(f), 8.110(C)(3)(a), 8.110(C)(3)(i). On May 1, 2003, and on the first day of each succeeding month until this case reaches final judgment, the Chief Judge of the Ingham Circuit Court shall provide this Court with a written report regarding the progress of this case.
We do not retain jurisdiction.
MARKMAN, J., concurs and states as follows.
It is long overdue that this Court exercises its general superintending authorityin this case. I differ from my colleagues in the extent to which I would allow this case to continue to deplete public resources as well as in the nature of the oversight in which I would engage.
*719 After fifteen years of litigation; after seven years of "expediting" this litigation in response to an order from this Court; after the certification of a class of more than 50,000 persons; after at least several hundred thousand dollars a year in largely public funds going to plaintiff's attorneys and presumably an equivalent amount incurred by the state in its defense of this well as the costs incurred by the people of Ingham County through support of their circuit court and sheriff's offices; after several thousand pleadings; after more than fourteen years of discovery of documents; after at least sixty thick volumes of transcripts and hearings; after years of discovery has still left over six thousand witnesses remaining to be deposed; and in light of the fact that this litigation is now apparently at a standstill, it is well past time for this Court to insist that this case come promptly to an end.
In its opinion seven years ago, this Court stated:
After nearly eight years of pretrial litigation, this Court is convinced that the resolution of this case must be accomplished fairly and expeditiously. We expect not only the swift resolution of this case, we further expect that the parties and the court will engage in the appropriate good will so that resolution will be an easier task. [451 Mich. 470, 518, 548 N.W.2d 210 (1996).]
For the sake of the integrity of Michigan's legal system, its limited judicial resources, and its budgetary constraints, it is time for this Court to insist that this litigation draw to a close and that a final decision be rendered by the trial court.
My colleagues would extend this process for a minimum of an additional eight months, with all the attendant costs. I would not extend this process beyond ninety days. In asserting that a more extended and drawn-out process is necessary to bring this case to a halt, I believe that my colleagues implicitly accept certain premises that have been brought to bear by the trial court in its handling of this litigation. I do not share these premises.[1] In my judgment, what is necessary for the final disposition of this case is simply for this Court to demonstrate a resoluteness of purpose and impose a firm and early deadline upon the trial court. "Business as usual" can no longer be tolerated. If this case cannot be resolved within fifteen years and ninety days, I doubt that it can be resolved within fifteen years and 240 days. Indeed, if it cannot be resolved within fifteen years and ninety days, I would surmise that this case might be inappropriate for judicial resolution altogether.
I further disagree with the monitoring of this case that my colleagues now propose. I do not consider it appropriate for this Court to review the procedural details of trial court litigation on a weekly or monthly basis, just as I do not consider it appropriate for this Court to monitor the details of how this litigation should be brought to an end. Rather, these are the responsibilities of the trial court and of the chief judge of the Ingham Circuit Court, and I am content to leave these responsibilities where they belong without adding further paperwork burdens.[2] My charge *720 to the trial court and the chief judge would be a simpler and more straightforward one: "This case must end within ninety days, by whatever reasonable means that you find to be appropriate. Period." Justice in this case, however it is ultimately defined, is long overdue for one or the other of the parties. If, in fact, there are constitutional infirmities in the administration of the Michigan prison system, then tens of thousands of prisoners have by now served their entire sentences under that administration without remedy. The one constant has been that this case has droned incessantly in the background during the beginning, the middle, and the end of their incarcerations. In my judgment, this case must now be resolved.
NOTES
[1] For example, I do not believe that it is legally foreordained that a class action of 50,000 plaintiffs-inmates, such as this one, can only proceed through discovery proceedings in which the individual circumstances of each of these 50,000 inmates is scrutinized and effectively placed in constitutional issue.
[2] I note that this Court ordered a similar "report indicating the dates set for trial in this matter" in its 1996 order. 451 Mich, at 518, 548 N.W.2d 210. There is no record that such a report was ever produced.